**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 25-2085

———————

MARTIN AND HARRIS PRIVATE LIMITED,

Appellant

v.

MERCK & CO., INC.

———————

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:23-cv-23418)
District Judge: Honorable Claire C. Cecchi

———————

Submitted under Third Circuit L.A.R. 34.1(a)
March 26, 2026

Before: HARDIMAN, SCIRICA*, and AMBRO, Circuit Judges

(Opinion filed: August 6, 2026)

———————

OPINION*

———————

*This disposition is not an opinion of the full Curt and pursuant to I.O.P. 5.7 does not constitute binding precedent.

* The Honorable Anthony J. Scirica was unavailable to participate in the decision in this case after submission to the merits panel. The opinion in this matter was filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

AMBRO, *Circuit Judge*

After engineering a series of delays in foreign proceedings it initiated against Merck and Co. Inc., Appellant Martin & Harris Private Ltd. sued Merck in the United States District Court for the District of New Jersey, alleging that the foreign proceedings were hopelessly stalled. Merck filed a motion to dismiss the complaint on *forum non conveniens* grounds, and the District Court granted its request.[1] Now, we will affirm.

## I.   BACKGROUND

At some point in the 1930s, Organon Laboratories U.K. ("Organon") named Martin & Harris Private Ltd. ("M&H") the exclusive importer and distributor of its pharmaceutical products in India.  As their relationship developed, M&H took an increasingly central role in Organon's Indian operations.  For example, it also manufactured certain pharmaceutical products using raw materials imported by a subsidiary of Organon ("Organon India"). M&H subsequently distributed those products per its exclusive right to do so. However, the partnership gave way to litigation after a series of transactions involving Organon.

First, Schering Plough Corporation acquired Organon in 2007. Then, in 2009, Merck and Co. Inc. ("Merck") acquired Schering Plough through a merger, and thereby placed Organon under its control. According to M&H, the latter transaction sounded the death knell for its dealings with Organon. More specifically, M&H alleges that Merck (1)

---

[1] As discussed in greater detail below, the doctrine of *forum non conveniens* authorizes federal courts "to decline jurisdiction in exceptional circumstances." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947).

decided to end Organon India's relationship with M&H in February 2010; (2) communicated its decision to do so in July 2010; and (3) maintained that termination was effective as of November 2, 2010.[2]

On November 8, 2010, M&H sued Organon, certain of its affiliates, and Merck for breach of contract in the Bombay High Court (the "India Action"), seeking approximately $346 million in damages. Discovery began in 2015, at which point the Bombay High Court ordered the parties to submit affidavits of documents and complete discovery and inspection of those documents by February 13, 2015. Additionally, it ordered M&H to serve a list of witnesses, along with an affidavit of evidence for its first witness by March 7, 2015. M&H missed both deadlines and, insofar as the record makes clear, has not submitted an affidavit of evidence to date.

In November 2020, M&H filed an application for discovery under 28 U.S.C. § 1782 (the "1782 Action") in the District Court of New Jersey. M&H sought materials and testimony from Merck for use in the India Action. *See In re Martin & Harris Priv. Ltd.*, 2021 WL 2434069, at *1 (D.N.J. June 14, 2021). In its analysis, the Court concluded that M&H "fail[ed] to explain its efforts to procure" the discovery materials it sought. *Id.* at *5. Moreover, the Court doubted "that M&H ever actually sought" those materials in the India Action. *Id.* Yet it permitted M&H to subpoena Merck anyway. *Id.* at *8. Accordingly, the

---

[2] While the relationship between M&H and Organon was governed by an oral agreement for a significant period, M&H contends that a 1998 letter agreement contained material terms that "did not permit" unilateral termination of their partnership. Appellant's Opening Br. 5.

3

latter produced documents from eleven different custodians, and M&H remotely deposed three witnesses. In October 2023, the Court dismissed the 1782 Action with prejudice.

In January 2023, the Bombay High Court listed the India Action for hearing. But M&H requested and ultimately received a series of adjournments. And while the matter was adjourned, M&H filed a new suit in the District Court of New Jersey (the "District Court"), asserting claims of tortious interference with contract, tortious interference with prospective business relations, and unjust enrichment (the "Current Action"). In doing so, M&H alleged that "nothing material ha[d] occurred in [the India Action], and it appear[ed] hopelessly stalled." A39.

In January 2024, the Bombay High Court listed the India Action for hearing once more. At that time, Merck notified the Bombay High Court of the Current Action and allegations of delay. The Bombay High Court issued a written response in which it observed there was "nothing on record to show that [M&H had] pursued [the India Action] with alacrity and in 'good faith.'" A328. Additionally, the Court concluded that it was "only [M&H] who is to blame for the stage at which the [India Action has] been pending since the year 2015." A328.

In March 2024, Merck filed a motion to dismiss the Current Action on *forum non conveniens* grounds. And in May 2025, the District Court granted its motion. M&H appeals that decision.

4

## II.    STANDARD OF REVIEW[3]

We review the dismissal of a complaint on *forum non conveniens* grounds for abuse of discretion. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008). However, dismissal may be reversed only when the abuse of discretion is "clear." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Windt*, 529 F.3d at 189 (quoting *Piper Aircraft*, 454 U.S. at 257). Thus, as a practical matter, the scope of review on appeal is "quite constrained." *Lacey v. Cessna Aircraft Co. ("Lacey II")*, 932 F.2d 170, 178 (3d Cir. 1991). We will reverse a district court's decision to dismiss only where it "fails to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum" or "clearly errs in weighing the factors to be considered." *Id.* (quoting *Lony v. E.I. Du Pont de Nemours & Co. ("Lony I")*, 886 F.2d 628, 632 (3d Cir. 1989).

## III.    DISCUSSION

Dismissal on *forum non conveniens* grounds is appropriate in "exceptional circumstances." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 439 (3d Cir. 2017) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). District courts engage in a three-step analysis when deciding whether to dismiss on that basis. *Lacey v. Cessna Aircraft Co. ("Lacey I")*, 862 F.2d 38, 43 (3d Cir. 1988). The order of this analysis is non-negotiable.

---

[3] The District Court had jurisdiction over the Current Action under 28 U.S.C. § 1332(a). We have jurisdiction on appeal under 28 U.S.C. § 1291.

*Id.* And the defendant bears the burden of proof at each step. *See, e.g., Lony I*, 886 F.2d at 632.

To grant dismissal, the district court must decide as a threshold matter "whether an adequate alternate forum can entertain the case." *Trotter*, 873 F.3d at 442. If so, the court must "determine[] the amount of deference due to the plaintiff's choice of forum." *Id.* Finally, it must "balance the relevant private and public interest factors." *Id.* M&H challenges the District Court's analysis at each stage.[4] However, we perceive no error.

### A. The District Court Did Not Err in Concluding India is an Adequate Alternative Forum.

For an alternative forum to be adequate, (1) "the defendant must be amenable to process" there, and (2) "the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff appropriate redress." *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007). Even when those requirements are satisfied, an alternative forum may still be inadequate in "rare circumstances" where the available remedies are "clearly unsatisfactory." *Piper Aircraft*, 454 U.S. 235, 254 n.22. And although M&H concedes that Merck is amenable to process in India and the claims at issue in the India Action are cognizable in the Bombay High Court, it contends that the

---

[4] M&H also contends that the District Court "erroneously made numerous factual determinations against [it] and discredited [its] expert declarations without conducting a hearing." Appellant's Opening Br. 27-28. But M&H does not dispute that it never requested an evidentiary hearing or otherwise argued that Merck's motion to dismiss could not be resolved without one. Moreover, it conceded that "[i]n assessing whether *forum non conveniens* dismissal is proper, courts consider *pleadings, affidavits, and other submitted documentary evidence.*" Appellant's Opp'n Br. 11 n.3, *Martin & Harris Private Ltd. v. Merck & Co., Inc.*, No. 23-cv-23418 (D.N.J.) (Dkt. No. 14) (emphasis added).

circumstances are rare. Indeed, according to M&H, the remedies available in the India Action are clearly unsatisfactory because the Bombay High Court suffers from significant delays and offers limited discovery procedures. We disagree.[5]

As an initial matter, we have recognized that delays may render a remedy clearly unsatisfactory such that the alternative forum is not adequate. *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995). But delays are permissible unless they are "profound and extreme." *Id.* For example, we concluded in *Bhatnagar* that an anticipated delay of "up to a quarter of a century" was "tantamount to no remedy at all." *Id.* at 1228. At the same time, courts typically find that a forum is adequate when delays are less stark. *Krish v. Balasubramaniam*, 2007 WL 1219281, at *3 (E.D. Cal. 2007) (approving a 7 to 10 year delay in India); *In re Bancredit Cayman Ltd.*, 2008 WL 5396618, at *4 (S.D.N.Y 2008) (approving a 6 to 10 year delay in the Dominican Republic); *Kyla Shipping Co. v. Shanghai Zhenhua Heavy Indus. Co.*, 2012 WL 1565634, at *6 (S.D. Ala. 2012) (concluding a delay of up to 17 years would not render Brazil an inadequate alternative forum).

Contrary to M&H's assertion, the record before us does not establish a profound and extreme delay. The parties presented evidence that, "as of 2023, 40% of commercial

---

[5] As the District Court observed, modern cases have routinely concluded that India is an adequate alternative forum. *See, e.g.*, *Chigurupati v. Daiichi Sankyo Co.*, 480 F. App'x 672, 674 (3d Cir. 2012); *Emqore Envesecure Private Cap. Tr. v. Singh*, 2022 WL 4104261, at *7 (D.N.J. Sept. 7, 2022); *Payoda, Inc. v. Photon Infotech, Inc.*, 2016 WL 1059515, at *4 (N.D. Cal. Mar. 17, 2016); *BMR & Assocs., LLP v. SFW Cap. Partners*, LLC, 92 F. Supp. 3d 128, 140-41 (S.D.N.Y. 2015); *Gosain v. State Bank of India*, 2011 WL 13383362, at *2 (S.D.N.Y. June 15, 2011).

cases in the Bombay High Court reached finality in six years or less, while 91% of cases reached finality in ten years or less." A9 (citing declarations submitted by both parties). Moreover, Merck offered evidence that disposition delays in the Bombay High Court will only decrease because more than 1,000 cases are slated for transfer to other courts. And although M&H notes that the India Action has already been pending for approximately fifteen years, the record demonstrated that M&H itself requested a series of adjournments and failed to pursue the India Action "with alacrity and in good faith." A10 (internal quotation marks omitted). Accordingly, the District Court reasonably concluded that the Bombay High Court was not inadequate as a result of delays.[6]

Next, M&H argues that discovery procedures in the Bombay High Court render it an inadequate alternative forum. In support of that position, M&H cites evidence that Indian courts lack compulsory production tools. This limitation is significant, according to M&H, because Merck withheld certain documents in the India Action and only produced them in response to a subpoena in the 1782 Action.

The problem with this argument is two-fold. First, the record indicates that Merck withheld documentary evidence in the India Action based on local discovery procedures

---

[6] M&H also charges that the District Court erroneously rejected opinion evidence that the India Action would take between 30 and 35 years to resolve in the Bombay High Court. But M&H's witness cited no support, and his estimate exceeded the data provided by either party. Thus, the District Court appropriately rejected it as speculative. *Cf. Bhatnagar*, 52 F.3d at 1229 (finding no clear error where the district court declined to rely on an expert's "hopeful pronouncement" that cited "no legal authority"); *Derensis v. Coopers & Lybrand Chartered Accts.*, 930 F. Supp. 1003, 1010 (D.N.J. 1996) (declining to rely on "speculation" in the absence of supporting evidence when considering features of an alternative forum).

8

and *the specific discovery order* issued by the Bombay High Court at that time.[7] Second, we have concluded that an alternative forum in which the defendant has submitted to jurisdiction may qualify as "adequate" even if it provides less "extensive" discovery than domestic courts. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 (3d Cir. 2010); *see id.* at 160 (concluding that France was an adequate alternative forum notwithstanding that French law did not provide "a method for obtaining documents from an objecting adversary or non-party"). So too here.

**B.      The District Court Afforded Appropriate Deference to M&H's Choice of Forum.**

"Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum." *Windt*, 529 F.3d at 190. "When a plaintiff is foreign, however, the choice of a United States forum 'deserves less deference.'" *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 874 (3d Cir. 2013) (quoting *Piper Aircraft*, 454 U.S. at 256). But a foreign plaintiff "may bolster the amount of deference due [its] choice by making a strong showing of convenience." *Windt*, 529 F.3d at 190.

Initially, the parties agree that Merck's principal place of business is located in New Jersey, and that "has considerable weight in showing that the plaintiff's choice was based

---

[7] Notably, the record further suggests that M&H "never sought inspection of additional documents, much less sought discovery of the material produced."  And in that context, Merck's subsequent disclosure of documentary evidence in the 1782 Action does not establish meaningful discovery deficiencies in the Bombay High Court.

9

on convenience." *Lony I*, 886 F.2d at 634. Nonetheless, we have held that a plaintiff's choice to sue a defendant in its home forum is not sufficient on its own to ratchet up the deference owed. *Windt*, 529 F.3d at 190-91 (considering the location of the relevant evidence and conduct notwithstanding that two of the defendants were at home in the plaintiff's chosen forum). So, in an effort to rescue its case, M&H argues that the District Court erroneously credited the location of evidence and the conduct that gave rise to the dispute.[8] The record belies these claims.

As to its first argument, M&H notes that it identified "at least four key witnesses relevant to this action who reside in the United States." Appellant's Reply 12. Yet it cites to a declaration stating that six of its eight key witnesses "either live in the United States *or abroad but outside of India*." A911 (emphasis added). In that context, M&H failed to establish precisely how many witnesses are located United States as a whole, let alone in New Jersey. *Cf. Windt*, 529 F.3d at 191 (instructing courts to consider "the relationship between *the local federal court district* and the case" (emphasis added)). At the same time, the record demonstrates that "only approximately 2%" of the documents produced in the 1782 Action came "from custodians based in the United States."

With respect to its location-of-conduct argument, M&H asserts that because Merck is headquartered in New Jersey, "[i]t is likely that discovery will reveal that conduct central to M&H's causes of action occurred [t]here." Appellant's Reply 11-12. But M&H does not

---

[8] M&H also argues that New Jersey is a convenient forum because it was "finally able to make headway in moving its case forward and obtaining discovery" in the 1782 Action. Appellant's Opening Br. 33. But this argument fails because M&H has not cited evidence that it ever attempted to obtain that discovery in India before resorting to the 1782 Action.

even attempt to identify any specific conduct that took place in New Jersey. Accordingly, the District Court reasonably concluded that that M&H—as a foreign plaintiff—was entitled to reduced deference.

### C. The District Court Reasonably Balanced the Relevant Private and Public Interest Factors.

"When seeking dismissal on grounds of *forum non conveniens,* a defendant must show that the balance of public and private factors 'tips decidedly in favor of trial in the foreign forum.'" *Kisano*, 737 F.3d at 877 (quoting *Lacey II*, 932 F.2d at 180). The overarching purpose of this exercise is to determine whether the plaintiff's "chosen forum would cause 'oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience.'" *Id.* (cleaned up). M&H challenges the District Court's analysis of both private and public interest factors, but the record does not support clear error.[9]

#### 1. The District Court considered and reasonably balanced the relevant private interest factors.

The relevant private interest factors include "ease of access to sources of proof, ability to compel witness attendance, and other potential obstacles to a cost-effective and expeditious trial." *Kisano*, 737 F.3d at 877. These factors affect the "convenience of the litigants." *Piper*, 454 U.S. at 241. And, as the District Court determined, they tip in favor of Merck.

---

[9] As a preliminary matter, M&H asserts that the District Court "failed to make a finding that litigation in [New Jersey] would be vexatious and oppressive to Merck." Appellant's Opening Br. 21. But we have explained that district courts need not make this finding explicitly so long as they conduct a "thorough analysis of the private and public interest factors." *Kisano*, 737 F.3d at 877 (cleaned up). We therefore reject this argument.

11

To begin, approximately "74% of the documents produced through the 1782 Action came from India-based custodians, whereas 2% came from custodians in the United States." A15 (citing A908). Moreover, 28 of the 42 witnesses identified by M&H itself across the India Action and 1782 Action reside in India. And although M&H disputes the conclusion that most of the documents and witnesses relevant to claims and defenses in the Current Action are located in India, it ultimately concedes they are not concentrated in New Jersey.

Finally, the District Court observed that the existence of parallel actions over the same conduct would impede an "easy, cost-effective, and expeditious trial." A17 (citing *Eurofins*, 623 F.3d at 162 (favoring dismissal where the parties would otherwise "face the substantial inconvenience of litigating two actions, which involve a common nucleus of operative facts, in two fora")). Accordingly, it reasonably concluded that private interest factors favor dismissal.[10]

### 2. The District Court considered and reasonably balanced the relevant public interest factors.

Relevant public interest factors include (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized controversies decided at

---

[10] M&H reiterates its argument that the District Court failed to consider limitations on discovery in India. Yet we reject its discovery-based challenge for the reasons stated above. Additionally, M&H contends that digital developments—including the use of electronic productions and remote depositions—have rendered the location of evidence insignificant. Thus, it argues, the District Court erred by emphasizing the location of evidence and witnesses in its private-interest analysis. In any event, we decline to address this contention because the District Court considered—and the record supported—additional private interest factors.

home, (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6. These factors affect the "convenience of the forum." *Id.* at 241. And, like before, they tip in favor of dismissal.

The District Court observed that India has a much greater interest in the underlying dispute because the underlying events generally occurred in India. Moreover, although it acknowledged that Merck is at home in New Jersey, the Court concluded this aspect was outweighed by the "India-centric nature of the controversy." A18. And given the lack of significant connections to New Jersey, it concluded there was little reason "to burden New Jersey residents with jury service." A18.

The District Court also noted that the India Action is well underway, and parallel proceedings would risk conflicting orders and judgments that create "unnecessary administrative challenges." A18. Moreover, it once again addressed and discounted M&H's argument concerning delays in the Indian Action. We thus perceive no error in the District Court's conclusion that public interest factors weigh in favor of dismissal.[11]

---

[11] The parties agree that the law of New Jersey and India are substantively similar. M&H thus contends that the District Court erred by failing to weigh this fact in its favor with respect to the applicable public interest factors. Yet it argues "this factor is neutral." Appellant's Opening Br. 48. Accordingly, we take M&H at its word and reject this challenge.

13

\*         \*         \*

For the reasons stated, we affirm the grant of Merck's motion to dismiss on *forum non conveniens* grounds.